IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| RHONDA FLORA, | ) | |
| | ) | Case No. 4:08CV00031 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| JPS ELASTOMERICS, et al., | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |
| | ) | |

Before me is Defendant National Single-Ply, Inc.'s Motion to Set Aside Default/Default Judgment. I heard oral argument on this motion on June 18, 2009, and it has been briefed by the parties. For the reasons given below, I will **GRANT** Defendant National Single-Ply, Inc.'s Motion to Set Aside Default/Default Judgment on the condition that Defendant National Single-Ply, Inc. agrees to the requirements in the accompanying Order. If Defendant National Single-Ply, Inc. fails to agree or meet the conditions set forth in the accompanying Order, then the Motion to Set Aside Default/Default Judgment will be denied accordingly.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Plaintiff Rhonda Flora ("Plaintiff") presented herself as a customer at Defendant Lowe's Home Centers, Inc.'s ("Lowe's") Martinsville, Virginia store on September 14, 2006. Plaintiff's truck was parked outside an entrance commonly known as the "construction entrance" at the Lowe's store. As she was loading her truck with building materials just purchased from the store, a drain pipe fell from the roof of the Lowe's store striking her on her shoulder, neck and legs. The drain pipe fell as employees were working to repair the roof of the Lowe's

1

Martinsville store. The roof at the Martinsville Lowe's is partially constructed of roofing products manufactured by JPS Elastomerics. Prior to Plaintiff's visit, Defendant Lowe's engaged Defendants JPS Elastomerics and JPS Industries, Inc. ("JPS Elastomerics") to repair a portion of the roof that was allegedly leaking.

Defendant JPS Elastomerics hired an independent contractor, Defendant National Single-Ply, Inc., ("National Single-Ply") to replace the roofing materials manufactured by JPS Elastomerics that were still under the manufacturer's warranty. Plaintiff asserts that employees of National Single-Ply were working on the roof at the time of the incident, and negligently caused or permitted the drain pipe to fall and strike the Plaintiff.[1] (Compl. ¶¶ 11-12.) On May 2, 2007, Argonaut Specialty ("Argonaut"), National Single-Ply's insurer, first received a notice of loss from Lowe's third party administrator. On May 11, 2007, Argonaut hired an insurance adjuster to investigate the accident. (Cortese Aff. ¶ 3.) The adjusting firm took pictures of the drainage system which showed that the drainage piping was secured by some type of wiring. (*Id.*) On December 3, 2008, the file was closed by Argonaut, as the investigation by the adjusting firm indicated that National Single-Ply did not install the drainage pipes. (*Id.* ¶ 4.) Argonaut received notice from Yates Insurance, National Single-Ply's insurance provider, that a lawsuit had been filed, but noted that National Single-Ply was not a named defendant. (*Id.* ¶ 5.)

On September 4, 2008, Plaintiff filed suit in the Circuit Court of Henry County against Defendants JPS Elastomerics and Lowe's. This case was removed to this Court on the basis of diversity of citizenship by Defendant Lowe's on October 2, 2008. On October 22, 2008, Plaintiff filed a Motion to Remand to state court on the basis that Defendant JPS Elastomerics

---

[1] Pursuant to this Court's May 18, 2009 Order, Defendant Lowe's was dismissed from this case without prejudice. However, Plaintiff retains the right to re-file against Lowe's within six months from the date of the May 18, 2009

2

did not consent to the removal of the case to federal court. On November 24, 2008, Defendant JPS Elastomerics filed a Motion for Summary Judgment. Plaintiff obtained leave to amend her Complaint on January 15, 2009 and named Defendant National Single-Ply as a Defendant for the first time. Plaintiff served National Single-Ply by way of substituted service on the Secretary of the Commonwealth of Virginia pursuant to Va. Code Ann. § 8.01-329. The certificate of compliance of service of process as to Defendant National Single-Ply was filed with this Court on January 29, 2009. However, Plaintiff did not include a summons as required by Rule 4 of the Federal Rules of Civil Procedure.[2] Plaintiff served National Single-Ply a second time with a copy of the Amended Complaint on April 8, 2009, this time with a summons. Plaintiff elected to serve the Amended Complaint and the summons personally on National Single-Ply's registered agent. Pursuant to Plaintiff's April 8, 2009 service on National Single-Ply, National Single-Ply's Answer was due by April 28, 2009.

On April 8, 2009, the registered agent for National Single-Ply, Jeffrey J. Cohen, was served with the Amended Complaint and summons, who promptly forwarded the Amended Complaint to Yates Insurance, National Single-Ply's insurance agent and an agency for National Single-Ply's insurer Argonaut. (Cohen Aff. ¶ 4.) Mr. Cohen promptly wrote a letter to Yates Insurance enclosing a copy of the Summons and the Amended Complaint. (*Id.*) Yates Insurance received the letter and the Amended Complaint on April 10, 2009. (*Id.*) On April 30, 2009, Yates Insurance called Argonaut to inquire as to the status of counsel in this matter. (Cortese Aff. ¶ 10.)

---

Order and Lowe's agreed to waive any applicable statue of limitations defense. (Docket No. 56.)
[2] On January 27, 2009, Yates Insurance informed Argonaut Specialty that a Complaint had been received by the insured. However, Argonaut claims it did not receive a copy of the Amended Complaint in January 2009. (Cortese Aff. ¶ 6.) On January 27, 2009, Argonaut assigned the file to Efrain Moran, a temporary adjuster. (*Id.* ¶ 7.) Argonaut subsequently terminated Mr. Moran's employment status on February 27, 2009. (*Id.* ¶ 8.)

3

On May 4, 2009, Plaintiff filed a Motion for Default Judgment as to Defendant National Single-Ply. On May 12, 2009, this Court heard several motions in this matter, including the Plaintiff's Motion for Default Judgment as to Defendant National Single-Ply, Inc. On May 18, 2009, the Court issued an Order denying Plaintiff's Motion to Remand to state court, granting Defendants JPS Elastomerics and JPS Industries, Inc.'s Motion for Summary Judgment, granting a voluntary dismissal as to Defendant Lowe's with conditions, and taking under advisement Plaintiff's Motion for Default Judgment as to Defendant National Single-Ply, Inc. (Docket No. 56.) Pursuant to the Court's May 18, 2009 Order, Defendant National Single-Ply's default was confirmed under Fed. R. Civ. P. 55 and the Plaintiff was granted leave of thirty (30) days to obtain the deposition of Plaintiff's treating physician for the purpose of proving damages. Finally, on May 18, 2009, Argonaut assigned this case to counsel.

On May 26, 2009, counsel for National Single-Ply entered an appearance with this Court. A Motion in Opposition to Default Judgment or in the Alternative Motion to Set Aside Default/Default Judgment was filed by National Single-Ply on June 4, 2009. Plaintiff filed a Memorandum in Opposition on June 16, 2009 and National Single-Ply filed a Reply Memorandum in support of its Motion to Set Aside Default/Default Judgment on June 17, 2009. This Court heard oral argument on National Single-Ply's Motion to Set Aside Default/Default Judgment on June 18, 2009.

## II.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure provides that a default may be entered when a party has failed to plead or otherwise respond as required by Rule 12. *See* Fed. R. Civ. P. 55(a). Rule 55(c) also provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).

4

Whether a default judgment should be entered or respondents allowed to answer is a matter resting in the sound discretion of the district court. *Werner v. Carbo*, 731 F.2d 204, 206 (4th Cir. 1984); *Papagianakis v. The Samos*, 186 F.2d 257, 263 (4th Cir. 1950). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). The preferred disposition of any case is upon the merits and not by default judgment, but this preference is counterbalanced by considerations of social goals, justice, and expediency. *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). Whether to set aside the entry of default or vacate a default judgment is left to the discretion of the district judge. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006).

### III. DISCUSSION

The Fourth Circuit Court of Appeals has expressly held that "Rules 55(c) and 60(b) are to be liberally construed in order to provide relief form the onerous consequences of defaults and default judgments." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). Thus, defaults and default judgments are particularly disfavored, as such remedies are inconsistent with the federal courts' preference for resolving disputes on their merits. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). Because defaults and default judgments are so disfavored by the courts, Rule 55 also provides a procedure for setting aside defaults and default judgments.

    A.    <u>Defendant National Single-Ply's Motion to Set Aside Default/Default Judgment Should be Adjudged Under the "Good Cause" Standard</u>

The entry of a party's default is the official recognition that the party is in default. The entry of default is a prerequisite for the entry of judgment upon that default. *See New York v.*

5

*Green*, 420 F.3d 99, 104 (2d Cir. 2005). Thus, there are two stages in a default proceeding: the entry of default itself, followed by the entry of a default judgment. The basis for an entry of default is that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a).

Defendant National Single-Ply was served with a summons and a copy of the Amended Complaint on April 8, 2009. Thus, National Single-Ply was required to file a responsive pleading by April 28, 2009.[3] During the Court's May 12, 2009 hearing, the Court stated that Plaintiff was "entitled to the default" and the only remaining aspect was to prove damages. (Pretrial Hr'g Tr. 5, May 12, 2009.) This Court entered an Order on May 18, 2009 taking Plaintiff's Motion for Default Judgment under advisement and confirming National-Single-Ply's default under Rule 55. (Docket No. 56.) The Plaintiff was given additional time to take the deposition of Plaintiff's treating physician in order to determine the amount of damages. (Docket No. 56.) At the June 18, 2009 hearing, it was virtually uncontested by the parties that the Court had entered a default pursuant to Rule 55. The Court had not entered a "judgment" on National Single-Ply's default because damages had not yet been fully determined. Rule 55 specifically authorizes the district courts to set aside an entry of default "for good cause." *See* Fed. R. Civ. P. 55(c). Thus, the standard upon which Defendant's Motion to Set Aside Default/Default Judgment is to be adjudged is the "good cause" standard found in Rule 55, as opposed to the more stringent standard of Rule 60(b). *See Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007) (stating that the "good cause" test is more lenient than the Rule 60(b) standard for setting aside a default judgment). I find that the standard to be applied in this case is the "good cause" standard for setting aside an entry of default, as default judgment has yet to be

6

entered by the Court in this matter.

    B.    <u>Defendant National Single-Ply Has Met the "Good Cause" Standard to Set Aside the Default</u>

  Since I have concluded that the appropriate standard in this case with regard to National Single-Ply's Motion to Set Aside Default/Default Judgment is the "good cause" standard contained in Rule 55(c), I must now determine whether circumstances exist to justify setting aside the entry of default. The Fourth Circuit has set forth specific criteria for district courts to consider when deciding whether to set aside an entry of default. A district court should consider: (1) whether the moving party has a meritorious defense; (2) whether it acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). The disposition of motions made under Rule 55(c) is largely within the discretion of the district court and such determinations are generally case specific and made in a practical, commonsense manner. *See id.* at 204; *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003).

  National Single-Ply contends that it has a meritorious defense in this case. A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim. *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988). National Single-Ply argues that the two-year statute of limitations in Virginia for personal injury claims expired prior to Plaintiff naming National Single-Ply as a party in this case. National Single-Ply also argues that it was not involved with either the initial construction of the roof at the Lowe's store or the installation of

---

[3] As of the date of this Opinion, Defendant National Single-Ply has failed to file a response pleading in this matter.

the drainage system on the store's roof. Since National Single-Ply did not construct or install the piping used in the drainage system, it had no notice of any faulty installation with regard to the drainage system. Plaintiff counters that National Single-Ply cannot plead the statute of limitations because the Amended Compliant relates back to the date of the original Complaint, and that National Single-Ply has failed to explain why the drainage pipe fell while its employees were repairing Lowe's roof. After reviewing the submissions of the parties, I conclude that National Single-Ply's proffered defenses, if proven, would acquit it of liability. National Single-Ply's assertions certainly rise to the level to warrant a finding of a meritorious defense. This conclusion is further supported by the notion that any doubts regarding evidence should be resolved in the movant's favor. *See Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 812.

Plaintiff concedes that National Single-Ply moved to set aside the entry of default in a timely fashion. National Single-Ply responded approximately seventeen days after the Court's May 18, 2009 Order confirming the entry of default. This is approximately nine days after counsel for National Single-Ply made their first appearance in this matter. As for prejudice, I find no disadvantage to Plaintiff beyond that suffered by any party which loses a quick victory. Plaintiff contends that National Single-Ply has raised factual issues that the original installers of the roof at Lowe's, JPS Elastomerics, may have been responsible for the accident. Although JPS Elastomerics was dismissed from this case on a motion for summary judgment, Plaintiff actually withdrew her objection to JPS Elastomerics' motion at the May 12, 2009 hearing. (Pretrial Hr'g Tr. 29, May 12, 2009.) It is also worth noting that Plaintiff did not file her Complaint until September 4, 2008, a mere ten days prior to the running of the statute of limitations, leaving her with little to time to investigate her claim and discover any further potential parties. Plaintiff's predicament regarding the possible liability of former parties in this action is partly the result of

her waiting to file suit until the very last minute. I also find no history of dilatory action on the part of National Single-Ply itself. It appears from the record that National Single-Ply forwarded all legal papers to its insurance agent, Yates, who in turn forwarded the documents to the insurer Argonaut Specialty. The conduct of the named defendant in this case, National Single-Ply, is only untimely with regard to the present issue of default. Thus, I find no significant history of dilatory action on the part of National Single-Ply.

The personal responsibility of the defaulting party is a much tougher issue to resolve. National Single-Ply states in its Memorandum that it relied on its insurance carrier to protect its interests. National Single-Ply maintains it was in contact with its local insurance carrier after the accident on September 14, 2006. (Workman Aff. ¶ 5.) When the Amended Complaint was served on National Single-Ply, National Single-Ply's registered agent turned the service papers over to the insurance agency, who in turn submitted the legal documents to the insurance carrier Argonaut. National Single-Ply submits that it did not know it was in default until May 29, 2009, and Argonaut had a duty to defend its interests in this action. However, National Single-Ply, as the named party in this suit, bears the ultimate responsibility to receive legal papers and file a timely response. It appears that National Single-Ply relied on its insurance carriers to handle the defense of this suit. The failure of the insurance company and insurance carrier in this matter to capture and record incoming legal papers is clear from the record. The fact that Argonaut admits to receiving the Amended Complaint in January 2009 and assigning it to a claims adjuster demonstrates the extent of the breakdown of Argonaut's internal controls for the receipt and processing of legal papers. As the Fourth Circuit has stated, the "sloppy handling of papers by which legal actions are commenced is inexcusable." *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 898 (4th Cir. 1987) (Haynsworth, J., concurring).

9

Plaintiff asserts that National Single-Ply is vicariously liable for the actions of its insurance providers in this matter. While I render no opinion as to the validity of Plaintiff's argument regarding vicarious liability, I do recognize that National Single-Ply bears some personal responsibility for the entry of default.[4] National Single-Ply was first served with a copy of the Amended Complaint on January 29, 2009. Plaintiff served the Amended Complaint on National Single-Ply a second time, along with a required summons, on April 8, 2009. However, National Single-Ply did not enter an appearance until May 26, 2009. Although National Single-Ply bears some responsibility for this default, its insurers completely failed to fulfill their obligations to National Single-Ply to defend this claim. National Single-Ply's insurers failed to capture and record the incoming legal papers in the matter, and failed to retain counsel in a timely fashion. The conduct of the insurance providers in this matter is very troubling, as they should have adequate internal controls to process papers by which legal actions such as this one are commenced.

This leads me to the final part of my analysis under the "good cause" standard – the availability of less drastic sanctions. There are clearly sanctions available in this case that are less severe than a judgment by default. The Fourth Circuit has liberally construed Rule 55(c) in order to provide relief from the onerous consequences of defaults and default judgments. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). Any doubts as to whether relief should be

---

[4] Although I am sympathetic to the notion that Argonaut, the insurer responsible for defending National Single-Ply, is largely responsible for the default, I cannot agree with National Single-Ply's position that it is a blameless party. I also disagree with National Single-Ply's position that the fault of an insurance company is the same as the fault of counsel. The Fourth Circuit carved out an explicit exception for the situation where an attorney is solely responsible for the default. *See United States v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982). In the case at hand, the source of the default rests with both National Single-Ply and its insurer Argonaut. The insurance company's position is markedly different from that of an attorney. Argonaut was a real party in interest, although not a named defendant. National Single-Ply had ceded to Argonaut the handling of the defense and all decisions to be made in that regard.

10

granted "should be resolved in favor of setting aside the default so that the case may be heard on the merits." *See id.* Since the Fourth Circuit's preference for resolving disputes on the merits is clear, I conclude that less severe sanctions are appropriate in this case. I find that a monetary sanction[5] against National Single-Ply is proper to compensate Plaintiff for her costs and attorney's fees incident to filing the Motion for Default Judgment and producing evidence to support the motion. Finally, I will impose an additional sanction that National Single-Ply may not assert the statute of limitations as a defense. The aim is to get to the merits of the case, not to resolve it on a missed deadline. The dual sanctions that I am imposing are to compensate Plaintiff and to deter further dilatory action by this defendant and others. Under the present circumstances, I conclude that the interests of justice will be best served by a trial on the merits.

## IV. CONCLUSION

For the reasons stated above, I will **GRANT** Defendant National Single-Ply's Motion to Set Aside Default/Default Judgment in this case. An appropriate Order containing the specific conditions of this ruling will be entered.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 7th day of July, 2009.

s/Jackson L. Kiser
Senior United States District Judge

---

[5] It is a matter between National Single-Ply and Argonaut as to who will bear the ultimate burden of the monetary sanction.

11